UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| HALEY HARGIS, as Personal Representative of the ESTATE OF JONATHAN MARK HARGIS,<br><br>     Plaintiff,<br><br>v.<br><br>OVERTON COUNTY, TENNESSEE, CITY OF LIVINGSTON, MELISSA BARNES, AMANDA POORE, DONALD SHAVER, DUSTIN PETTIT, AMBER BEATY, DAVID NELSON, SAMUEL WEBB, CHRISTENA SAKKINEN, MELODY CRAWFORD, BRITTANY SIDWELL, MICHAEL THARP, J.D. MASTERS, THOMAS JOHNSON, and JEREMY LAYCOCK,<br><br>     Defendants. | Civil Action No. _____ |

**COMPLAINT and
DEMAND FOR JURY TRIAL**

The Plaintiff, for the claims against the Defendants, alleges as follows:

1.　　This is a complaint for false imprisonment, assault, battery, and violations of 42 U.S.C. § 1983 arising out of the Livingston Police Department and Overton County Sheriff's Department's illegal detention and murder of Plaintiff's Decedent, Jonathan Mark Hargis.

2.　　In May 2020, the entire country watched with horror as multiple Minneapolis Police Department officers knelt on George Floyd for approximately seven to eight minutes, killing him.

1

3.     For the next year, the murder of George Floyd—and the positional asphyxia by which it was accomplished—was the subject of endless news reports, discussion, and attention, particularly in the law enforcement community.

4.     Despite all of this, on March 30, 2021, correctional officers and deputies at the Overton County Sheriff's Department ("OCSD") attempted to "restrain" Mr. Hargis while in custody at the Overton County Jail by placing him face-down on the floor and leaning significant weight onto his torso for over three minutes, asphyxiating him.

5.     Given the worldwide publicity of the George Floyd murder and the officers' general training, each of the officers who participated in killing Mr. Hargis was excruciatingly aware of the specific risks of their unlawful and excessive conduct.

6.     More tragically, Mr. Hargis should never have been at the Overton County Jail in the first place.

7.     The Livingston Police Department ("LPD") initially detained Mr. Hargis on March 29, 2021, ostensibly pursuant to Tennessee's law for emergency involuntary treatment of a mental illness or serious emotional disturbance.

8.     Instead of following the mandatory involuntary commitment procedures spelled out in Title 33, Part 6, Chapter 4 of the Tennessee Code, the LPD officers who detained Mr. Hargis imprisoned him at the Overton County Jail despite the fact that he had no criminal charges against him and no warrants out for his arrest.

9.     This refusal to follow the law was not a one-off mistake; since February 2020, the LPD and OCSD have illegally placed dozens of people in the Overton County Jail for no reason other than having a mental illness, in complete disregard for state and federal law.

2

10.     Thus, the Estate of Jonathan Mark Hargis brings this case for, among other things, remedies for the violations of Mr. Hargis's constitutional rights pursuant to 42 U.S.C. § 1983.

## PARTIES

11.     Plaintiff Haley Hargis is the Personal Representative of the Estate of Jonathan Mark Hargis and was duly appointed by the Overton County Chancery Court by Order entered on February 8, 2022, in Case No. 22-PR-14 (hereinafter "Plaintiff," "Mr. Hargis," or "the Estate").

12.     Jonathan Mark Hargis was a United States citizen and a resident of Overton County, Tennessee, at the time of his death.

13.     Defendant Overton County, Tennessee, is a municipal corporation formed and existing under the laws of the State of Tennessee and may be served with process through the County Executive's Office, located at 306 West Main Street, Room 232, Livingston, Tennessee 38570.  Overton County, Tennessee, by and through the actions of the Overton County Sheriff's Department, is a "person" for purposes of 42 U.S.C. § 1983.

14.     Defendant City of Livingston is a municipal corporation formed and existing under the laws of the State of Tennessee and may be served with process through the Livingston Mayor's Office, located at 301 McHenry Circle, Livingston, Tennessee 38570.  City of Livingston operates the Livingston Police Department and is considered a "person" for purposes of 42 U.S.C. § 1983.

15.     Defendant Melissa Barnes is an officer employed by the Overton County Sheriff's Department and is sued in her personal capacity. Defendant Melissa Barnes may be served with process at 1479 Old Union Road, Hilham, Tennessee 38568.

3

16.     Defendant Amanda Poore is the Overton County Sheriff's Department jail administrator and is sued in her personal capacity. Defendant Amanda Poore may be served with process at 329 Meadowbrook Circle, Livingston, Tennessee 38570.

17.     Defendant Donald Shaver is a deputy and/or officer employed by the Overton County Sheriff's Department and is sued in his personal capacity. Defendant Donald Shaver may be served with process at 915 Chestnut Street, Livingston, Tennessee 38570.

18.     Defendant Dustin Pettit is an officer employed by the Overton County Sheriff's Department and is sued in his personal capacity. Defendant Dustin Pettit may be served with process at 1025 Skyline Drive, Monterey, Tennessee 38574.

19.     Defendant Amber Beaty is an officer employed by the Overton County Sheriff's Department and is sued in her personal capacity. Defendant Amber Beaty may be served with process at 125 Masiongale Road, Pall Mall, Tennessee 38577.

20.     Defendant David Nelson is an officer employed by the Overton County Sheriff's Department and is sued in his personal capacity. Defendant David Nelson may be served with process at 374 W. Stevens Street, Apt. B, Cookeville, Tennessee 38501.

21.     Defendant Samuel Webb is an officer employed by the Overton County Sheriff's Department and is sued in his personal capacity. Defendant Samuel Webb may be served with process at 17791 Clarkrange Highway, Monterey, Tennessee 38574.

22.     Defendant Christena Sakkinen is an officer employed by the Overton County Sheriff's Department and is sued in her personal capacity. Defendant Christena Sakkinen may be served with process at 136 Boles Road, Hilham, Tennessee 38568.

23.     Defendant Melody Crawford is an officer employed by the Overton County Sheriff's Department and is sued in her personal capacity. Defendant Melody Crawford may be served with process at 216 Oakley Allons Road, Allons, Tennessee 38541.

24.     Defendant Brittany Sidwell is an officer employed by the Overton County Sheriff's Department and is sued in her personal capacity. Defendant Brittany Sidwell may be served with process at 78 Melvin Hummel Road, Allons, Tennessee 38541.

25.     Defendant Michael Tharp is a deputy employed by the Overton County Sheriff's Department and is sued in his personal capacity. Defendant Michael Tharp may be served with process at 3920 Celina Highway, Allons, Tennessee 38541.

26.     Defendant J.D. Masters is a police officer employed by Defendant City of Livingston and is sued in his personal capacity. Upon information and belief, Defendant J.D. Masters may be served with process at 136 Ward Lane, Livingston, Tennessee 38570.

27.     Defendant Thomas Johnson is a police officer employed by Defendant City of Livingston and is sued in his personal capacity. Defendant Thomas Johnson may be served with process at 721 Oakley Allons Road, Allons, Tennessee 38541 or, alternatively, at Livingston Police Department, 900 North Church Street, Livingston, Tennessee 38570.

28.     Defendant Jeremy Laycock is a police officer employed by Defendant City of Livingston and is sued in his personal capacity. Defendant Jeremy Laycock may be served with process at 214 E. Wilmouth Road, Rickman, Tennessee 38580.

## JURISDICTION AND VENUE

29.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiff brings these claims for relief pursuant to 42 U.S.C. § 1983.

5

30.     This Court also had jurisdiction over this action pursuant to 28 U.S.C. § 1367, based upon supplemental jurisdiction for the state law claims.

31.     Based upon its supplemental jurisdiction, this Court should exercise its pendent jurisdiction because the Plaintiff's state law claims derive from the same common nucleus of operative facts as the federal claims and all such claims are so interrelated that they may be fairly and efficiently disposed of in one lawsuit.

32.     Venue is properly set within this district pursuant to 28 U.S.C.S. § 1391(b), because, among other things, all Defendants reside in or are located in the Middle District of Tennessee and the events upon which this suit are based occurred in this judicial district.

## RELEVANT FACTS

### Background on emergency detention procedure in Tennessee

33.     Tennessee has a clear, statutory process for the emergency detention and involuntary admission of mentally ill individuals who pose a substantial and immediate risk of harm to themselves or others.

34.     This process, outlined in Tenn. Code Ann. § 33-6-401, *et seq.*, is intended to balance individuals' liberty interests in safety and freedom of movement with relevant state interests.

35.     According to this statutory procedure, if a law enforcement officer has reason to believe that a person poses an immediate substantial likelihood of serious harm because of a mental illness or serious emotional disturbance, then that officer may detain the person for immediate examination to determine if the person requires involuntary admission to a mental health facility. *See* Tenn. Code Ann. §§ 33-6-401, -402.

6

36.     If a law enforcement officer detains a person pursuant to Tenn. Code Ann. § 33-6-402 and brings the person to a licensed physician, the physician must immediately examine the person to decide whether the person is subject to involuntary admission to a hospital or other treatment resource under Tenn. Code Ann. § 33-6-403.  *See* Tenn. Code Ann. § 33-6-404.

37.     If the physician determines the person is subject to involuntary admission, the physician must:

    a.  Complete a Certificate of Need ("CON") for emergency diagnosis, evaluation, and treatment showing the factual foundation for the conclusions reached on each item of Tenn. Code Ann. § 33-6-403;

    b.  Assess the person's clinical needs in consultation with a mental health professional or knowledgeable family member; and,

    c.  If admission is sought to a state-owned or state-run facility, verify that the state-owned or state-run facility has been contacted and has available suitable accommodations, acknowledging such verification in writing.

*See* Tenn. Code Ann. § 33-6-404(3)(B).

38.     Once the physician has completed the steps set forth in Tenn. Code Ann. § 33-6-404, the physician must give the original CON and a written statement verifying that the state-owned or state-run facility has available accommodations to the local sheriff.  *See* Tenn. Code Ann. § 33-6-406.

39.     It is then the sheriff's responsibility not only to transport the person to the state-owned or state-run facility at which the person is proposed to be admitted, but also to notify the facility as to where the person is and the best estimate of anticipated time of arrival at the facility.  *See* Tenn. Code Ann. § 33-6-406.

7

40.     At no time is it permissible to detain a person subject to emergency detention and/or involuntary admission in a jail unless the person has been charged with or convicted of a crime. *See* Tenn. Code Ann. § 33-6-425.

***LPD and OCSD officers illegally place Jonathan Hargis in jail***

41.     On March 29, 2021, at 6:53 a.m., the Livingston Police Department ("LPD") received a call reporting a disturbance in regard to a man later identified as Jonathan Mark Hargis, a/k/a Jonathon Mark Hargis, who was walking around the Carr Gas station on Bradford Hicks Drive in Livingston, Tennessee.

42.     The caller told LPD that "they need to do something with [Mr. Hargis] before he hurts somebody or gets hurt hisself" (spelling matches pronunciation).

43.     At or around 7:00 a.m., Defendants J.D. Masters ("Officer Masters") and Thomas Johnson, a/k/a Tommy Johnson ("Officer Johnson") of the LPD arrived at the Carr Gas station.

44.     At or around 7:08 a.m., Officer Masters and Officer Johnson took Mr. Hargis into custody and escorted him to the Emergency Department at Livingston Regional Medical Center ("LRMC").

45.     According to LPD's Command Log, Mr. Hargis was being transported to LRMC for a "POSSIBLE 604."

46.     The "POSSIBLE 604" notation is a reference to Tenn. Code Ann. § 33-6-404.

47.     While Officers Masters and Johnson were en route to LRMC with Mr. Hargis, Officer Johnson contacted Defendant Jeremy Laycock ("Sgt. Laycock") of LPD and asked, "Jeremy, can you grab one of those forms out of that back office? We're going to need that here just momentarily for the doctor to sign to hold [Mr. Hargis] over at the Garrett Motel."

8

48.     "Garrett Motel" is a commonly used reference to the Overton County Jail, for which Sheriff John Garrett of the Overton County Sheriff's Department ("OCSD") has charge and custody.

49.     The form requested by Officer Johnson is "Part 1" of a three-part document created by the State of Tennessee Department of Mental Health and Substance Abuse Services ("DMHSAS"). The purpose of the form ("Emergency Detention Form") is to document an emergency detention for immediate mental health examination as authorized by Tenn. Code Ann. § 33-6-402.

50.     LPD regularly maintains blank copies of the Emergency Detention Form for completion by hospital physician(s) and staff before LPD officers transport persons with mental illnesses or serious emotional disturbances to the Overton County Jail.

51.     At or around 7:10 a.m., Officer Masters and Officer Johnson entered the LRMC Emergency Department with Mr. Hargis and escorted him to a room.

52.     At or around 7:22 a.m., Sgt. Laycock arrived at the LRMC Emergency Department with the Emergency Detention Form.

53.     By 7:22 a.m., LPD had confirmed, and Officer Masters, Officer Johnson, and Sgt. Laycock had become aware, that Mr. Hargis had no outstanding warrants in Overton County or any surrounding jurisdictions.

54.     In other words, LPD had no probable cause to arrest or detain Mr. Hargis for any crime.

55.     Officer Masters, Officer Johnson, and Sgt. Laycock detained Mr. Hargis at the LRMC Emergency Department for a total of approximately 40 minutes, during which time

9

Officer Masters supervised Mr. Hargis while Officer Johnson and Sgt. Laycock arranged for completion of the Emergency Detention Form.

56. At or around 7:24 a.m., Dr. Karen Oldham signed the Emergency Detention Form, stating "confusion, hallucinations and delusions" as her basis for believing Mr. Hargis to be suffering a mental illness or serious emotional disturbance and posing an immediate risk of harm.

57. Although the nursing staff at the LRMC Emergency Department completed Mr. Hargis' triage and intake, Dr. Karen Oldham never personally examined Mr. Hargis.

58. At Officer Johnson and Sgt. Laycock's behest, Dr. Karen Oldham completed the Emergency Detention Form using only the information conveyed to her instead of personally examining Mr. Hargis to determine whether his condition required involuntary admission to a hospital or treatment resource pursuant to Tenn. Code Ann. § 33-6-404.

59. At or around 7:40 a.m., Dr. Karen Oldham again signed the Emergency Detention Form and noted Mr. Hargis's disposition as "medically cleared."

60. Upon completion of the Emergency Detention Form, Officer Johnson told Officer Masters in a hushed tone so that Mr. Hargis would not hear him, "Alright, hospital has his papers if you wanna take him and go to the jail."

61. At or around 7:48 a.m., Officer Masters, Officer Johnson, and Sgt. Laycock brought Mr. Hargis outside LRMC and placed him into Officer Masters' police cruiser.

62. Once Mr. Hargis was inside Officer Masters' cruiser with the door closed, Officer Masters asked Officer Johnson and Sgt. Laycock to contact OCSD to arrange for the sally port to be open with persons ready to assist in bringing Mr. Hargis into the jail.

10

63.     Officer Masters then entered his police cruiser and drove Mr. Hargis to the Overton County Jail.

64.     On the way to the jail, Officer Masters told dispatch over the radio he was taking Mr. Hargis to "the other place," deliberately concealing their true destination from Mr. Hargis.

65.     Upon arriving at the jail, Officer Masters met with two OCSD corrections officers, Defendant Dustin Pettit ("Sgt. Pettit") and Defendant Amber Beaty ("Officer Beaty"), and arranged to take Mr. Hargis into the jail.

66.     At 7:55 a.m., Defendant Amanda Poore ("Jail Administrator Poore") booked Jonathan Mark Hargis into the Overton County Jail and assigned him a booking and jacket number.

67.     Jonathan Hargis was neither charged with nor convicted of a crime at the time he was being booked into the Overton County Jail.

68.     Nor was Mr. Hargis even **suspected** of any crime.

69.     In the OCSD's jail management system, Mr. Hargis was booked as an inmate for a purported "psychiatric hold" using the code "0671 – 6401 HOLD."

70.     "0671 – 6401 HOLD" is a custom code created by OCSD for processing individuals being detained for having a mental illness or serious emotional disturbance and purportedly awaiting involuntary admission to Moccasin Bend Mental Health Institute ("Moccasin Bend"), one of four regional mental health institutes operated by the State of Tennessee.

71.     "0671 — 6401 HOLD" is a reference to Tenn. Code Ann. § 33-6-401 *et seq.*

72.    Of the 52 counties in Middle and East Tennessee served by Moccasin Bend, only Overton County's jail management system has a custom code for booking individuals for "psychiatric hold."

73.    Despite being booked for a "psychiatric hold" pending admission to Moccasin Bend, neither LPD nor OCSD nor any personnel at LRMC contacted Moccasin Bend to check for available accommodations or otherwise apprise Moccasin Bend of an intent to transport Mr. Hargis to that facility.

74.    At 7:56 a.m., Officer Masters, Sgt. Pettit, and Officer Beaty forced Mr. Hargis into a small, dirty cell in the booking area of the jail, despite his pleas to be put somewhere else.

75.    After forcing Mr. Hargis into his cell, Officer Masters said to him through the door, "Serve out your time," by which Officer Masters intended to mean, and which is understood to mean, an instruction that Mr. Hargis serve a criminal sentence.

76.    At or around 7:57 a.m., Sgt. Pettit asked Officer Masters whether Mr. Hargis had any pending charges.  Officer Masters responded, "No charges yet; day's not over though."

77.    For clarity, at that time Sgt. Pettit, Officer Beaty, Jail Administrator Poore, and Officer Masters all understood that Mr. Hargis had not been charged with any crime, that there was not probable cause to hold Mr. Hargis for any crime, and there was no warrant on which to hold Mr. Hargis.  That is, they knew there was no legal justification to hold Mr. Hargis "yet."

78.    Officer Masters then thanked the OCSD corrections officers for their assistance and exited the jail.

79.    Despite the clear mandate of Tenn. Code Ann. § 33-6-425 that no person be detained at a jail unless that person has been charged with or convicted of a crime, and despite the failure of anyone to ever contact Moccasin Bend about Mr. Hargis as required by Tenn. Code

12

Ann. § 33-6-404 and -406, OCSD detained Mr. Hargis at the Overton County Jail for the next 29 hours for the ostensible purpose of awaiting availability for Mr. Hargis at Moccasin Bend.

***OCSD and LPD's practice of illegally detaining mentally unwell persons***

80.     Mr. Hargis was not the first person illegally held at the Overton County Jail for a "psychiatric hold," nor was he the last.

81.     Beginning in 2020, Overton County and City of Livingston, by and through OCSD and LPD, respectively, adopted a policy and custom of *de facto* criminalizing mental illness and flatly ignoring the process required by Tennessee law for emergency detention and involuntary admission.

82.     Since February 11, 2020, OCSD has illegally booked and detained 52 persons as inmates at the Overton County Jail for so-called "psychiatric holds" pending admission to Moccasin Bend.

83.     For each of the 52 persons illegally detained at Overton County Jail, OCSD booked them into the jail management system using the "0671 — 6401 HOLD" code customized by OCSD for the express purpose of detaining mentally ill persons with no criminal charges.

84.     LPD worked with OCSD to accomplish the jailing of some, if not all, of the 52 persons illegally detained since February 2020, including Jonathan Hargis.

85.     LPD keeps blank copies of the Emergency Detention Form in its back office for the ultimate purpose of using the Tennessee statute for emergency detention as pretext to incarcerate mentally ill persons at the jail, a/k/a the "Garrett Motel."

***Background during 2020 and 2021***

86.     Law enforcement agencies throughout the country have known for decades that keeping individuals in the prone position for an extended period of time results in dangerous

health risks because it can interfere with the individual's ability to breathe. This phenomenon is known as "positional asphyxia," "compression asphyxia," and "restraint asphyxia."

87. A bulletin to law enforcement communities, written and published by the U.S. Department of Justice in 1995, described the "vicious cycle" that occurs when an individual is restrained while face-down: The individual's breathing becomes labored; when weight is applied to the person's back, the compression exacerbates the individual's difficulty breathing; the natural reaction to oxygen deficiency (struggling more violently) occurs; the officer applies more compression to subdue the individual; and the individual is asphyxiated.

88. The dangers of positional asphyxia are significantly exacerbated when the individual is restrained (*e.g.*, handcuffs and leg shackles).

89. As a result of the well-known and well-documented effects of putting weight on a subdued individual in a prone restraint, police departments for over 25 years have been implementing policies and training to instruct officers that they should *not* leave restrained individuals in the prone position for extended periods of time and should *not* put pressure onto their necks and/or torsos.

90. Then, on May 25, 2020, four officers with the Minneapolis Police Department murdered George Floyd by way of positional asphyxia for approximately seven to eight minutes.

91. The murder of George Floyd sparked international protest against police violence and a national conversation about the dangers of positional asphyxia.

92. In June 2020, while the nation was still reeling from the death of George Floyd, Tennessee received the attention of local and national media regarding the in-custody death of Sterling Higgins at the Obion County Jail after a civil rights lawsuit had been filed against the officials involved, accusing them of asphyxiating Sterling Higgins on the floor of the jail.

93. From May 25, 2020, through March 30, 2021, positional asphyxia and excessive force were at the forefront of national discussion about policing in America.

94. During that time, Overton County Sheriff John Garrett and other decision-making personnel at the OCSD were well aware of the inherent risks of prone restraints.

95. In fact, in July 2020, the OCSD even included as part of a one-hour training presentation for deputies on intellectual and developmental disabilities ("IDD") a warning about the dangers of positional asphyxiation, advising deputies to "[a]void pressure to neck, back, or chest" and to "[e]nsure you can see the person's face during a restraint."

***OCSD officers use excessive force and kill Jonathan Hargis***

96. On March 30, 2021, at or around 12:53 p.m., Defendant Samuel Webb ("Officer Webb") and Defendant Christena Sakkinen ("Officer Sakkinen") purportedly observed Mr. Hargis scratching at his eye.

97. Based solely on this purported observation, Officers Webb and Sakkinen decided to assault and restrain Mr. Hargis.

98. Officer Webb and Officer Sakkinen contacted the facility nurse and radioed for backup to help restrain Mr. Hargis.

99. Sgt. Pettit, Defendant David Nelson ("Cpl. Nelson"), and Defendant Donald Shaver ("Lt. Shaver") came to the booking area to help place Mr. Hargis into a restraint chair.

100. Lt. Shaver asked Jonathan Hargis to hold his hands through the pie-flap of the door so that Lt. Shaver could apply handcuffs to his wrists.

101. Hargis complied with Lt. Shaver's request, and Lt. Shaver handcuffed him.

102. At approximately 12:56 p.m., Officer Webb, Sgt. Pettit, Cpl. Nelson, and Lt. Shaver opened the door of Mr. Hargis' cell with a restraint chair readied.

15

103.     Moments later, Mr. Hargis lunged toward Sgt. Pettit, at which time the four men wrestled Mr. Hargis to the ground and subdued him.

104.     At Lt. Shaver's instruction, Officer Webb left the booking area at approximately 12:57 p.m. to fetch leg-irons to further restrain Mr. Hargis.

105.     By 12:59 p.m., Cpl. Nelson and Officer Webb shackled Jonathan Hargis' legs.

106.     Then, Lt. Shaver and Sgt. Pettit hoisted Mr. Hargis to his knees and began to move him into the restraint chair.

107.     Having been illegally detained, lied to about going to jail, assaulted, and experiencing a mental health crisis, Mr. Hargis perceived a threat to his life and dove toward the ground to avoid being put into the restraint chair.

108.     After a couple of minutes, Officer Webb, Sgt. Pettit, Cpl. Nelson, and Lt. Shaver again tried to forcibly move Mr. Hargis from the ground and into the restraint chair with Officer Sakkinen's assistance.

109.     Again, in context, perceiving a threat to his life, Mr. Hargis pushed his head down into the restraint chair, grabbed the arm of the chair, and struggled with the officers for several minutes.

110.     At approximately 1:06 p.m., Defendant Melissa Barnes ("Officer Barnes") and Defendant Melody Crawford ("Officer Crawford") approached Hargis in the booking area of the jail to assist the other officers.

111.     At about this time, Jail Administrator Poore and Defendant Brittany Sidwell ("Officer Sidwell") were present and observing.

16

112.    At approximately 1:07 p.m., in response to Mr. Hargis pushing back from the restraint chair, Sgt. Pettit and Cpl. Nelson forced him to the floor, slamming Mr. Hargis' head onto the ground in the process.

113.    Once Mr. Hargis was on the ground, Defendant Michael Tharp ("Lt. Tharp"), a road deputy and training officer at OCSD, entered the booking area to assist in restraining Mr. Hargis.

114.    At approximately 1:08 p.m., Mr. Hargis was lying prone on the floor of the jail while Lt. Tharp restrained his legs and Sgt. Pettit and Cpl. Nelson placed significant body weight on Mr. Hargis' torso.

115.    From approximately 1:08 p.m. to 1:10 p.m., while multiple officers held him down, Jonathan Hargis attempted to move his still-handcuffed hands under his chest in order to push himself up to breathe.

116.    At this time, upon information and belief, all officers were aware that Mr. Hargis was having trouble breathing.

117.    Each time Mr. Hargis attempted to bring his hands under his chest, Sgt. Pettit and Cpl. Nelson forcibly stretched his hands back outward and Cpl. Nelson put pressure onto the back of Mr. Hargis's neck.

118.    During that use of force, Mr. Hargis shifted slightly onto his side.

119.    At approximately 1:11 p.m., Lt. Shaver, Lt. Tharp, Sgt. Pettit, Cpl. Nelson, and Officer Webb forced Mr. Hargis back into the prone position and held him down, with Sgt. Pettit and Cpl. Nelson placing nearly all of their body weight onto Mr. Hargis' torso.

17

120.     While holding Mr. Hargis down in a prone restraint, Sgt. Pettit and Officer Webb forced his hands out from under him, preventing him from being able to push himself up to breathe.

121.     Moments later, Officer Crawford placed her foot onto Mr. Hargis' backside and assisted in holding Mr. Hargis down in a prone position.

122.     That position already restricted Mr. Hargis' ability to breathe, and Officer Crawford's foot and weight amplified the restriction.

123.     Officer Sakkinen and Officer Barnes assisted Sgt. Pettit and Officer Webb in holding Mr. Hargis' arms, further restricting Mr. Hargis' ability to breathe.

124.     For approximately 3 minutes and 16 seconds, as many as seven officers at any given time held Mr. Hargis down on the floor of the jail, with two officers—Sgt. Pettit and Cpl. Nelson—placing most, if not all, of their body weight onto his upper body:



125. Officer Sidwell and Jail Administrator Poore saw and were aware of the other officers' excessive use of force and ongoing positional asphyxiation of Mr. Hargis.

126. Yet, Officer Sidwell and Jail Administrator Poor did nothing to intervene.

127. At approximately 1:15 p.m., Officer Barnes noticed Mr. Hargis was unresponsive.

128. The OCSD officers slowly turned Mr. Hargis over onto his back and found that he was not breathing.

129. As Officer Barnes and the facility nurse attempted to resuscitate Mr. Hargis with a sternum rub, chest compressions, and use of the jail's AED machine, Jail Administrator Poore called for an ambulance.

130. At approximately 1:20 p.m., paramedics transported Mr. Hargis to LRMC for emergency medical care.

131. Jonathan Hargis was later transported to TriStar Southern Hills Medical Center, where he was diagnosed with anoxic brain injury.

132. At approximately 1:00 p.m. on March 31, 2021, Jonathan Hargis died of his injuries sustained at the Overton County Jail.

133. The Davidson County Medical Examiner's Office concluded Mr. Hargis's cause of death was asphyxia and the manner of his death was a homicide. The OCSD Defendants killed Mr. Hargis by way of asphyxia.

## FIRST CAUSE OF ACTION
**Section 1983 Claim for False Arrest & False Imprisonment Against Livingston Defendants**

134. Plaintiff hereby realleges and incorporates by reference all of the preceding paragraphs as though they were fully set forth herein.

135. At all relevant times, Officer Masters, Officer Johnson, and Sgt. Laycock (collectively, "the Livingston Defendants") were acting under color of state law.

19

136.     Officer Masters, Officer Johnson, and Sgt. Laycock willfully and intentionally seized, detained, and arrested Jonathan Mark Hargis, and caused him to be imprisoned, without probable cause, and without a reasonable basis to believe such cause existed.

137.     The Livingston Defendants wrongfully and unlawfully detained Jonathan Mark Hargis and caused him to be imprisoned with deliberate indifference toward, and with callous disregard for, his constitutional rights.

138.     Although the Livingston Defendants ostensibly detained Jonathan Mark Hargis pursuant to Tenn. Code Ann. § 33-6-401 *et seq.*, Defendants violated and abused the statute to justify throwing Mr. Hargis into jail and did so with no intention of assisting him in obtaining mental health care.

139.     By arresting and detaining Jonathan Mark Hargis at the Overton County Jail without any criminal charges and without probable cause, the Livingston Defendants subjected Mr. Hargis to false arrest and false imprisonment in violation of his Fourth Amendment right to be free from unreasonable seizure.

140.     By denying Jonathan Mark Hargis the process to which he was entitled pursuant to Tenn. Code Ann. § 33-6-401 *et seq.*, the Livingston Defendants deprived Mr. Hargis of liberty interests secured and/or guaranteed by Tennessee law—including but not limited to Tenn. Code Ann. § 33-3-101(a), Tenn. Code Ann. § 33-6-425, and Tenn. Const. art. I §§ 7 and 8—in violation of his Fourteenth Amendment right to due process.

141.     Additionally, by denying Jonathan Mark Hargis the process to which he was entitled under state law, the Livingston Defendants deprived Mr. Hargis of liberty interests also guaranteed by federal constitutional law, including but not limited to freedom of movement, freedom from undue restraint, and/or the right to adequate medical care.

20

142.     Based on the foregoing, the Livingston Defendants violated Section 1983 and caused Mr. Hargis to suffer the deprivation of his liberty, the loss of his constitutional rights, and mental anguish.

## SECOND CAUSE OF ACTION
**Municipal Liability Pursuant to Section 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978) for Livingston Defendants' Violations of Civil Rights Against the City of Livingston**

143.     Plaintiff hereby realleges and incorporates by reference all of the preceding paragraphs as though they were fully set forth herein.

144.     At all relevant times, Defendant City of Livingston, by and through the actions, policies, and customs of the LPD and its officers, acted under color of law.

145.     It is the policy and custom of the LPD to illegally detain persons suspected of having a mental illness at the Overton County Jail, without probable cause to believe such persons have committed a crime and in deliberate indifference to such persons' rights.

146.     As part of its policy and custom of illegally jailing the mentally ill, LPD regularly maintains blank copies of the Emergency Detention Form for officers to use as a pretext for arranging to hold people with mental illnesses at the "Garrett Motel," a/k/a, the Overton County Jail.

147.     As a result of LPD's policy and custom of illegally jailing mentally ill persons with no criminal charges or outstanding warrants in clear violation of constitutional and Tennessee statutory law, the individual Livingston Defendants falsely arrested and imprisoned Jonathan Mark Hargis in violation of his Fourth Amendment right to be free from unreasonable seizures and his Fourteenth Amendment right to be free from deprivation of his liberty interests without due process of law.

21

148.    City of Livingston Chief of Police Greg Etheredge ("Chief Etheredge") is the final decision-maker with respect to establishing LPD policy relating to mental health detentions by City of Livingston police officers.

149.    At all relevant times Chief Etheredge was aware that LPD officers are only authorized by the State of Tennessee to effectuate initial emergency mental health detentions.

150.    At all relevant times Chief Etheredge knew or should have known the mandatory procedures and laws governing emergency detentions and involuntary admissions.

151.    Despite knowing his officers would likely come into frequent contact with persons experiencing mental illness, Chief Etheredge failed to implement policies and/or adequate training to guide interactions with the mentally ill and to instruct officers on how to comply with Tenn. Code Ann. § 33-6-401 *et seq.*

152.    At all relevant times Chief Etheredge was responsible for LPD's policy and custom of illegally jailing the mentally ill or, alternatively, tolerated or acquiesced to his officers' practice of unlawfully imprisoning persons with mental illness.

153.    Chief Etheredge reviewed and approved both the decisions made and reasons for falsely arresting and imprisoning Jonathan Mark Hargis.

154.    For the reasons stated herein, the City of Livingston is liable for the deprivation of Mr. Hargis' liberty, the loss of his constitutional rights, and his mental anguish.

## THIRD CAUSE OF ACTION
### Section 1983 False Imprisonment Claim Against Dustin Pettit, Amber Beaty, and Amanda Poore

155.    Plaintiff hereby realleges and incorporates by reference all of the preceding paragraphs as though they were fully set forth herein.

22

156.     At all relevant times, Sgt. Pettit, Officer Beaty, and Jail Administrator Poore were acting under color of law.

157.     Sgt. Pettit, Officer Beaty, and Jail Administrator Poore willfully and intentionally booked and imprisoned Jonathan Mark Hargis without probable cause, in violation of state and federal law, and without due process pursuant to Tennessee law for emergency detention and involuntary admission.

158.     Even after learning Mr. Hargis had not been arrested for probable cause or otherwise had any charges against him, Jail Administrator Poore booked Jonathan Hargis into the Overton County Jail, processing him as an inmate and keeping him in a cell alone for 29 hours.

159.     By doing so, Jail Administrator Poore, in conjunction with Sgt. Pettit and Officer Beaty, subjected Mr. Hargis to false imprisonment, thereby violating his Fourth Amendment right to be free from unreasonable seizure.

160.     Despite booking Mr. Hargis as a "0671 – 6401 HOLD" pending admission to Moccasin Bend, Jail Administrator Poore did not check for or secure completion of a Certificate of Need, nor did Jail Administrator Poore make any attempt to secure an examination for Mr. Hargis in compliance with Tenn. Code Ann. §§ 33-6-404 and -407.

161.     Despite booking Mr. Hargis as a "0671 – 6401 HOLD" pending admission to Moccasin Bend, Jail Administrator Poore never contacted Moccasin Bend concerning availability or otherwise made any attempt to secure Mr. Hargis's transportation to a hospital or other treatment resource.

162.     By denying Mr. Hargis the process to which he was entitled pursuant to Tenn. Code Ann. § 33-6-401 *et seq.*, Jail Administrator Poore deprived Mr. Hargis of liberty interests secured and/or guaranteed by Tennessee law—including but not limited to Tenn. Code Ann. §

23

33-3-101(a), Tenn. Code Ann. § 33-6-425, and Tenn. Const. art. I §§ 7 and 8—in violation of his Fourteenth Amendment right to due process.

163.    As the person who booked Jonathan Mark Hargis into the Overton County Jail and who is otherwise tasked with the responsibility of overseeing the jail's administration, Jail Administrator Poore directly violated Jonathan Mark Hargis' civil rights.

164.    By reason thereof, Sgt. Pettit, Officer Beaty, and Jail Administrator Poore violated Section 1983 and caused Mr. Hargis to suffer the deprivation of his liberty, the loss of his constitutional rights, and mental anguish.

## FOURTH CAUSE OF ACTION
**Municipal Liability Pursuant to Section 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978) for Dustin Pettit, Amber Beaty, and Amanda Poore's Violation of Plaintiff's Constitutional Rights Against Overton County**

165.    Plaintiff hereby realleges and incorporates by reference all of the preceding paragraphs as though they were fully set forth herein.

166.    At all relevant times, Defendant Overton County, by and through the actions, policies, and customs of the OCSD and its personnel, acted under color of law.

167.    In conjunction with the LPD, it is the policy and custom of OCSD to illegally jail persons suspected of having a mental illness at the Overton County Jail without affording such persons the process due them pursuant to state and federal law, in deliberate indifference to such persons' rights.

168.    As part of its policy of illegally jailing the mentally ill, OCSD created a custom code for its jail management system for the sole purpose of booking individuals with mental illnesses and who have not been charged with or convicted of crimes.

169.    As a result of OCSD's policy and custom of illegally jailing mentally ill persons with no criminal charges or outstanding warrants in clear violation of constitutional and

24

Tennessee statutory law, OCSD has falsely imprisoned 52 individuals to date, including Jonathan Mark Hargis, in violation of the Fourth Amendment right to be free from unreasonable seizures and the Fourteenth Amendment right to be free from deprivation of liberty without due process of law.

170.     Overton County Sheriff John Garrett ("Sheriff Garrett") is the final decision-maker with respect to establishing official OCSD policy and training.

171.     At all relevant times Sheriff Garrett knew or should have known the mandatory procedures and laws governing emergency detentions and involuntary admissions under Tenn. Code Ann. § 33-6-401 *et seq.*

172.     Despite knowing that his deputies and/or jail administrator and correctional officers would frequently come into contact with persons experiencing mental illness, Sheriff Garrett and the OCSD failed to implement adequate training to guide interactions with the mentally ill and to instruct officers on how to comply with Tenn. Code Ann. § 33-6-401 *et seq.*

173.     Additionally, Sheriff Garrett and Jail Administrator Poore are the final decision-makers with respect to establishing OCSD policy relating to administration of the Overton County Jail.

174.     At all relevant times Sheriff Garret and Jail Administrator Amanda Poore were responsible for OCSD's policy and custom of illegally jailing the mentally ill or, alternatively, tolerated or acquiesced to the practice of unlawfully imprisoning persons with mental illness.

175.     For the reasons stated herein, Overton County is liable for the deprivation of Mr. Hargis's liberty, loss of his constitutional rights, mental anguish, and subsequent foreseeable injuries.

## FIFTH CAUSE OF ACTION
**False Imprisonment Pursuant to Tennessee Common Law Against Livingston Defendants, Dustin Pettit, Amber Beaty, Amanda Poore, and Overton County**

176.     Plaintiff hereby realleges and incorporates by reference all of the preceding paragraphs as though they were fully set forth herein.

177.     Officer Masters, Officer Johnson, and Sgt. Laycock ("the Livingston Defendants"), Sgt. Pettit, Officer Beaty, and Jail Administrator Poore intentionally, recklessly, and unlawfully violated the personal liberty of Jonathan Mark Hargis upon restraining, confining, booking, and detaining him against his will at the Overton County Jail without any legal justification.

178.     The restraint, confinement, booking, and detention of Jonathan Mark Hargis by the Livingston Defendants, Sgt. Pettit, Officer Beaty, and Jail Administrator Poore were in no way privileged or authorized.

179.     As a direct and proximate result of the unlawful restraint, confinement, booking, and detention, Jonathan Mark Hargis suffered injuries including but not limited to pain and suffering, emotional distress, and mental anguish.

180.     For their intentional and reckless conduct, punitive damages should be awarded.

181.     Plaintiff additionally asserts Overton County is liable for the false imprisonment of Jonathan Mark Hargis pursuant to Tenn. Code Ann. § 8-8-302 based on the intentional, reckless, and unlawful conduct of Jail Administrator Poore.

## SIXTH CAUSE OF ACTION
**Section 1983 Excessive Force Claim Against Overton County Defendants**

182.     Plaintiff hereby realleges and incorporates by reference all of the preceding paragraphs as though they were fully set forth herein.

26

183.     At all relevant times, Officer Webb, Officer Sakkinen, Sgt. Pettit, Cpl. Nelson, Lt.

Shaver, Lt. Tharp, Jail Administrator Poore, Officer Barnes, Officer Crawford, and Officer

Sidwell (collectively, "the Overton County Defendants") were acting under color of state law.

184.     The Overton County Defendants intentionally and willfully used excessive force

to subdue Jonathan Mark Hargis in a prone position, placing substantial weight onto his torso,

causing his death by asphyxiation without legal justification or excuse in violation of Mr.

Hargis's right to be free from undue restraint and excessive force guaranteed by the Fourteenth

Amendment.

185.     As a result of the Overton County Defendants' conduct, including the conduct of

those officers who idly watched as Jonathan Mark Hargis suffocated to death for over 3 minutes

and who made no attempts to intervene despite having an affirmative duty to do so, Mr. Hargis

was subjected to a level of force objectively in excess of what was reasonable under the

circumstances.

186.     As a result of the Overton County Defendants' excessive force and/or failure to

intervene, Jonathan Mark Hargis suffered physical injury, mental anguish, and death.

<u>**SEVENTH CAUSE OF ACTION**</u>
**Municipal Liability Pursuant to Section 1983 and *Monell v. Department of Social Services*,
436 U.S. 658 (1978) for Overton County Defendants' Violation of Plaintiff's Constitutional
Rights Against Overton County**

187.     Plaintiff hereby realleges and incorporates by reference all of the preceding

paragraphs as though they were fully set forth herein.

188.     Overton County Sheriff John Garrett, Jail Administrator Amanda Poore, and

OCSD's Facility Training Officer, Lt. Shaver, are the final decision-makers with respect to the

training of correctional officers at Overton County Jail.

189.     As a result of OCSD's policy and custom of illegally jailing the mentally ill for the purported purpose of involuntary admission to a hospital or treatment resource, the OCSD effectively operates the Overton County Jail as a *de facto* mental health facility.

190.     In spite of its policy of holding individuals with mental illness and serious emotional disturbance at its jail, OCSD, by and through Sheriff Garrett, Jail Administrator Poore, and Lt. Shaver, provides wholly inadequate training to its correctional officers in the care, custody, and treatment of such individuals.

191.     Specifically, OCSD correctional officers' training is limited to only a few hours of "mental health first aid" training, the focus of which is merely connecting the mentally ill with appropriate professionals, not care or treatment.

192.     None of OCSD's training for correctional officers addresses when and how to restrain an individual experiencing a mental health crisis safely and effectively; when it is appropriate to isolate someone with a mental illness and for how long; or how to otherwise diagnose or treat someone with a mental illness.

193.     OCSD further provides inadequate training on use of force to its correctional officers by offering only a cursory review of the subject matter and failing to address the dangers inherent in prone restraints and positional asphyxia.

194.     The inadequacy of OCSD's training program regarding mental illness and use of force, and the attendant likelihood that harm would result therefrom, are so obvious as to amount to a policy of deliberate indifference toward the rights of those with mental illness to adequate medical care and to be free from undue restraint and/or excessive force.

195.    As a direct result of OCSD's policy of deliberate indifference to the rights of those with mental illness, the individual Overton County Defendants suffocated and killed Jonathan Mark Hargis.

196.    For the reasons stated herein, Overton County is liable for causing Mr. Hargis the deprivation of his liberty, the loss of his constitutional rights, mental anguish, pain and suffering, and wrongful death.

## EIGHTH CAUSE OF ACTION
### Assault Pursuant to Tennessee Common Law Against Overton County Defendants

197.    Plaintiff hereby realleges and incorporates by reference all of the preceding paragraphs as though they were fully set forth herein.

198.    Officer Webb, Officer Sakkinen, Sgt. Pettit, Cpl. Nelson, Lt. Shaver, Lt. Tharp, Jail Administrator Poore, Officer Barnes, Officer Crawford, and Officer Sidwell ("Overton County Defendants") intentionally and/or recklessly took overt actions that caused Jonathan Mark Hargis to reasonably fear imminent physical harm.

199.    As a direct and proximate result of the Overton County Defendants' conduct, Jonathan Mark Hargis suffered injuries and damages including but not limited to pain and suffering, emotional distress, and mental anguish.

200.    For their intentional and reckless conduct, punitive damages should be awarded.

201.    Plaintiff also asserts Overton County is liable for the intentional and/or reckless conduct of Lt. Tharp and Jail Administrator Poore pursuant to Tenn. Code Ann. § 8-8-302.

## NINTH CAUSE OF ACTION
### Battery Pursuant to Tennessee Common Law Against Certain Overton County Defendants

202.    Plaintiff hereby realleges and incorporates by reference all of the preceding paragraphs as though they were fully set forth herein.

29

203.     Officer Webb, Officer Sakkinen, Sgt. Pettit, Cpl. Nelson, Lt. Shaver, Lt. Tharp, Officer Barnes, and Officer Crawford intentionally and/or recklessly committed acts that resulted in harmful and offensive contact when they used excessive and unlawful force to violently restrain and ultimately suffocate Jonathan Mark Hargis.

204.     The harmful and offensive contact caused by Officer Webb, Officer Sakkinen, Sgt. Pettit, Cpl. Nelson, Lt. Shaver, Lt. Tharp, Officer Barnes, and Officer Crawford was of such a nature as to infringe on a reasonable sense of personal dignity ordinarily respected in a civilized society.

205.     As a direct and proximate result of the harmful and offensive contact, Jonathan Mark Hargis suffered injuries and damages including but not limited to pain and suffering, emotional distress, mental anguish, and wrongful death.

206.     For their intentional and reckless conduct, punitive damages should be awarded.

207.     Plaintiff also asserts Overton County is liable for the intentional and/or reckless conduct of Lt. Tharp pursuant to Tenn. Code Ann. § 8-8-302.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, the Plaintiff hereby demands a trial by a jury.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs hereby pray for the following:

1.     A judgment against Defendants, jointly and severally, for compensatory damages in an amount to be proven at trial.

2.     A judgment against the individual Defendants for punitive damages in an amount to be proven at trial.

3.    An award of costs and attorney's fees, as provided by applicable provisions of federal and state statutory and common law.

4.    An award of pre- and post-judgment interest as permitted by law.

5.    For all other relief, both general and specific, to which Plaintiffs may be entitled.

Respectfully submitted,

 /s/ Gregory Brown
Gregory Brown, BPR# 027944
LOWE YEAGER & BROWN PLLC
900 S. Gay Street, Suite 2102
Knoxville, TN  37902
Phone: (865) 521-6527
Fax: (865) 637-0540
gb@lyblaw.net